IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


RAYMOND SETZKE                                                        PLAINTIFF


         v.                          Civil No. 07-5186


LARRY NORRIS, Director, Arkansas Department
of Correction; JOHN MAPLES, Warden of the
Grimes Unit, Arkansas Department of Correction;
LINDA GATES, Records Supervisor, Grimes Unit;
CHARLES PRUITT, Director of the Arkansas Crime
Information Center (ACIC); PAULA STITZ, Manager,
State Sex Offender Registry of the ACIC;
SHERIFF KEITH FERGUSON, Benton County,
Arkansas; DEPUTY FREE; DEPUTY JENSEN;
CAPTAIN PETRAY; LT. CARTER; MARK BERNTHAL;
LEANNE BAKER; AREA MANAGER OR SUPERVISOR
at the Area 1 Bentonville Office of the Department of
Community Corrections                                                DEFENDANTS


## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

         This is a civil rights action filed by the plaintiff, Raymond Setzke, pursuant to 42 U.S.C.

§ 1983.  Plaintiff proceeds in this case *pro se* and *in forma pauperis*.  Pending before the

undersigned for report and recommendation are the motions for summary judgment filed by the

plaintiff (Doc. 36, Doc.  66, and Doc. 98)[1], the motion for summary judgment filed by the Area

Manager or Supervisor, Leanne Baker, Mark Bernthal, Charles Pruitt, and Paula Stitz (Doc. 74),

and the motion to dismiss or alternative motion for summary judgment filed by Grimes Unit

Records Supervisor Linda Gates, Grimes Unit Warden John Maples, and Arkansas Department

of Correction Director Larry Norris (Doc. 95).

_____

         [1]Plaintiff has also filed numerous supplements to his summary judgment motions.

In December of 2004, prior to his release from incarceration from the Arkansas Department of Correction, Setzke was required to complete forms to register as a sex offender under the provisions of the Arkansas Sex Offender Registration Act (the Registration Act). His registration was based on his 1981 conviction in Illinois of the crime of indecent liberties with a child. Setzke maintains his constitutional rights were violated when he was refused release from prison unless he completed the paperwork to be placed on the registry. At a minimum, Setzke maintains he should have been provided an opportunity to challenge the applicability of the Registration Act. Setzke seeks compensatory and punitive damages as well as injunctive relief.

## **BACKGROUND**

On April 20, 1981, Setzke plead guilty in Du Page County, Wheaton, Illinois, to indecent liberties with a child. (Doc. 66) at page 4. He was sentenced to four years in the Department of Corrections with credit for time served since January 1, 1981. *Id.*

Nothing on the 1981 Illinois judgment mentions any requirement that Setzke register as a sex offender. (Doc. 66) at page 4. In fact, Illinois did not enact its first sex offender registration act until 1986. This act was entitled the Habitual Child Sex Offender Registration Act. *See People v. Logan*, 302 Ill. App. 3d 319, 323, 705 N.E. 2d 152 (1998). Under the 1986 act, registration was required by "any person who, after July 1, 1986, was convicted of at least two crimes against a victim under the age of 18." *People v. Malchow*, 306 Ill. App. 3d 665, 668, 714 N.E. 2d 583 (1999). By the time Illinois enacted this statute, Setzke had completed serving the sentence on the 1981 conviction. (Doc. 87) at page 1.

On January 8, 2004, in Arkansas, Setzke plead guilty to theft of property, theft by receiving, and domestic battery in the third degree. *Exhibit* A to (Doc. 74) at pages 1-3. He was

-2-

sentenced to a term of imprisonment of sixty-six months with fifty-four months suspended. *Id.*
The judgment noted he was not a sex or child offender and was not required to complete a sex
offender registration from. *Id.*

Prior to his release from the Arkansas Department of Correction (ADC) on parole,
Setzke was required to, and did, complete a State of Arkansas, Sex Offender Registration Form.
*Exhibit* B to (Doc. 74) at page 1.  The form listed the sentencing court as an out of state court in
Wheaton, Illinois and indicated Setzke was a sex or child offender.  *Id.*  The date of his arrest
was listed as January 1, 1981, by the Sheriff's Office in Wheaton, Illinois, for indecent liberties
with a child.  *Id.*

At the time, Setzke contends he protested having to complete and sign the form on the
grounds his conviction in Illinois occurred in 1981 and there was no requirement that he register
as a sex offender in Illinois.  *Complaint* (Doc. 1) at page 4.  Moreover, Setzke states he told the
ADC officials that Arkansas' Registration Act did not apply to him.  *Id.*  Despite this, Setzke
asserts he was told that if he wanted to get out of prison the sex offender registration form had
to be completed and signed.  *Id.*  Setzke asserts he was also told if the court disposition papers
said he didn't have to register then he had nothing to worry about.  *Id.*

Setzke signed the sex offender registration form on December 10, 2004. *Exhibit* B to
(Doc. 74) at page 1.  He listed his address as 5798 Walden Street, Lowell, AR  72745.  *Id.*  The
form is stamped as having been received by the Arkansas Crime Information Center (ACIC) on
December 13, 2004.  *Id.*

Setzke also signed on December 10, 2004, a form entitled Sex and Child Offender
Notification Form.  *Exhibit* B to (Doc. 74) at page 2.  The form stated, among other things, that
if the offender changed addresses, he was required to give the new address to the ACIC in

writing no later than ten days before the offender establishes residence or is temporarily domiciled at the new address. *Id.* Further, the form provided that by signing Setzke acknowledged he had read and understood the rules regarding his registration and knew his failure to comply with the requirements and failure to report changes in his address constituted a Class D felony and might result in his arrest, prosecution, or other administrative hearings. *Id.*

Setzke was paroled on December 13, 2004, under the supervision of the Arkansas Department of Community Correction. *Exhibit* C to (Doc. 74) at page 1. Setzke states he saw Leigh Ann Baker, his parole officer, on January 26, 2005, and requested a transfer to Illinois. (Doc. 110) at page 10. His request was denied because of his Arkansas Sex Offender Registry. *Id.*

In February of 2005, Setzke left the State of Arkansas for Illinois. (Doc. 87) at page 1. In March of 2006, Setzke states his Father died. (Doc. 110) at page 11. At this point, Setzke states he had a home to pay for, his Father's affairs to settle, and he was caring for his daughter. *Id.* He was stopped and arrested by the Warrenville, Illinois, police. *Id.* Setzke maintains the police contacted Leigh Ann Baker and she discharged the warrant because he had a lot to take care of. *Id.* Setzke was released. *Id.*

On May 1, 2006, the Sex Offender Screening & Risk Assessment Committee (SOSRA) sent Setzke a letter via certified mail to his address in Lowell setting up an assessment interview for May 15, 2006, in Pine Bluff, Arkansas, to determine Setzke's risk level. *Exhibit* D to (Doc. 74). The letter indicated the assessment would include a complete background review, an interview about his past behavior and certain psychological tests. *Id.* Setzke was told he could refuse the assessment but his refusal could result in him being charged with a Class D felony and being assigned a risk level 3. *Id.*

-4-

Setzke failed to appear for the interview, SOSRA sent a second letter by certified mail setting the screening interview for June 15, 2006. *Exhibit* F to (Doc. 74). When Setzke failed to appear for the second screening appointment, SOSRA took into account Setzke's known criminal history and issued a notice by certified mail on August 15, 2006, that he had been assessed a risk level 3 on the four-level assessment scheme. *Exhibit* G to (Doc. 74). The Arkansas Sex Offender Registry is publically available on ACIC's searchable website. http://www.acic.org/Registration/index.htm (accessed October 1, 2008). The United States Department of Justice also has a publically available website called the Dru Sjodin National Sex Offender Public Website. http://www.nsopr.gov/ (accessed October 1, 2008).

Setzke was advised that he could challenge the assigned risk level by requesting an administrative review. *Exhibit* G to (Doc. 74). As part of the review, he was told he would be afforded an opportunity to receive a copy of the taped interview & any documents generated by SOSRA. *Id.*

The Sex Offender Guidelines and Procedures provide that the offender has ten days from notification regarding his risk level to request administrative review of the risk assessment. *Exhibit* F to (Doc. 74) at page 3. If an offender is unsatisfied with the administrative review, he or she may then seek judicial review. *Id.* Judicial review follows the Administrative Procedures Act. Ark. Code Ann. §§ 25-15-201 *et seq.*

With respect to termination of registration, the procedures provide as follows:

The registration requirement for **sexually violent predators, recidivists** and those convicted or found not guilty by reason of mental disease or defect of an **aggravated sex offense**, or attempt thereof, is for life and may not be **terminated.** The registration requirement for offenders convicted of a **target offense** that does not qualify as an **aggravated sex offense** may be **terminated** upon completion of fifteen years of registration by order of the sentencing court,

or order of the court in the jurisdiction in which the offender lives, if the offender was sentenced by an authority other than an Arkansas court.   Additional flexibility is allowed for **termination** of the registration requirement for juveniles.

*Exhibit* F to (Doc. 74) at page 3.

On April 19, 2007, a parole violation revocation report was prepared by Mark Bernthal. *Exhibit* C to (Doc. 74) at pages 1-2.  The report summarized Setzke's violation history noting that he had absconded from supervision on February 23, 2005.  *Id.*  It was noted Setzke had not been seen by his parole officer since January 26, 2005, and that he had failed to attend his sex offender assessment in Pine Bluff in 2006.  *Id.* at page 2.  It was noted a violation report and parole board warrant had been issued on April 21, 2005.  *Id.*  Various other violations of the conditions of his parole were also listed.  *Id.*

The report also notes that Setzke had been arrested in Warrenville, Illinois, on May 2, 2006, but it states that he was released when authorities were unable to confirm the warrant with ACIC.  *Exhibit* C to (Doc. 74) at page 2.  The report does not state why the warrant could not be confirmed.  *Id.*  It was recommended that his parole be revoked and he be returned to the ADC. *Id.*

Setzke was arrested in Illinois on September 10, 2007.  (Doc. 89) at page 5.  He was transported back to the State of Arkansas.  (Doc. 89) at page 1.  He was booked into the Benton County Detention Center on the parole violation charge on September 21, 2007.  (Doc. 89) at page 4.

On October 30, 2007, he filed this lawsuit.  (Doc. 1).  On December 21, 2007, Setzke's parole was revoked and he was returned to the custody of the ADC.  (Doc. 75) at page 3.

-6-

## ARGUMENTS OF THE PARTIES

Setzke maintains the defendants violated his constitutional rights by placing him on the Arkansas Sex Offender Registry.  He contends the Arkansas Sex Offender Registration Act by its terms does not apply to his 1981 Illinois conviction for indecent liberties with a child.  He contends the Illinois conviction was not a "sex offense."  Furthermore, he asserts the Arkansas Registration Act only applies to convictions occurring on or after August 1, 1997.  He maintains his due process and "protected liberty" rights were violated when he was required to register in Arkansas based on his 1981 Illinois conviction for which he had completely served his sentence by January of 1985.  (Doc. 36) at page 1.  He additionally claims that the placement on the registry violated the ex post facto laws, his substantive due process rights, his right to equal protection, and the constitutional prohibition against double jeopardy.

Separate defendants Charles Pruitt, Paula Stitz, Mark Bernthal, Leanne Baker, and Vince Morris argue Setzke's listing on the Arkansas Sex Offender Registry does not reflect a cognizable claim under the United States Constitution or any related statute.  (Doc. 75) at page 3.  First, they maintain registration is non-punitive and therefore does not implicate a personal liberty interest.  Second, they point out the United States Supreme Court has already held that a state's requirement that a particular individual be listed on a sex offender registry does not implicate procedural due process concerns when the state bases the registration on the fact of a prior conviction.  Third, they maintain Arkansas' sex offender registration process affords offenders due process.

As Setzke's claim under § 1983 is improper, defendants argue this court should decline to exercise supplemental jurisdiction over any remaining state law claims.  Defendants maintain

-7-

interpreting the Arkansas' Sex Offender Registration Act of 1997, Ark. Code Ann. §§ 12-12-901 *et seq.,* would raise a novel or complex issue of Arkansas state law.  Alternatively, defendants argue Setzke was required to register under the version of the Arkansas Act in effect at the time of his incarceration at the Grimes Unit in 2004.  Specifically, defendants maintain that sex offenders moving to, or returning to the state from another jurisdiction had thirty days after August 1, 1997, to register pursuant to Ark. Code Ann. 12-12-906(a)(2)(A).  Defendants argue Setzke's 1981 conviction for indecent liberties with a child is similar to the sex offenses listed in Ark. Code Ann. §§ 12-12-903(a)(12)(A)(i) and he is therefore a sex offender and was required to register upon his release from the Grimes Unit.

Separate defendants Larry Norris, John Maples, and Linda Gates, first maintain Setzke's claims should be dismissed as the claims are barred by the doctrine of sovereign immunity.  Second, they argue the claims should be dismissed because Setzke failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act.  Third, they maintain the court lacks subject matter jurisdiction over Setzke's due process and double jeopardy claims.  Fourth, they maintain the court should decline to exercise supplemental jurisdiction over any remaining state law claims.  Alternatively, they maintain Setzke's claims against Norris and Maples should be dismissed because *respondeat superior* is not a permissible theory for claims brought pursuant to 42 U.S.C. § 1983.

## DISCUSSION

The essence of Setzke's claims are that his constitutional rights were violated when he was given the Hobson's choice of signing the Arkansas sex offender registry papers or remaining in prison.

-8-

*Failure to Exhaust Administration Remedies*

As noted above, Separate defendants Larry Norris, John Maples, and Linda Gates argue Setzke's claims are subject to dismissal because he failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act (PLRA). In support, they state the ADC has adopted an inmate grievance procedure, Administrative Directive 04-01, *Exhibit* A (Doc. 95). They also supply the affidavit of Tiffanye Compton, the inmate grievance supervisor, who indicates that Setzke never appealed an inmate grievance regarding his registration on the Arkansas Sex Offender Registry. *Exhibit* B (Doc. 95).

As amended by the PLRA, 42 U.S.C. § 1997e(a) mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The Supreme Court in *Booth v. Churner*, 532 U.S. 731, 738-39, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) held that "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought." *Walker v. Maschner*, 270 F.3d 573, 577 (8th Cir. 2001).

In this case, Administrative Direction 04-01 provides, *inter alia*, that the following matters are non-grievable matters: Parole matters; Release matters; State and Federal case law, laws or regulations. Thus, any complaint or concern Setzke had about being subject to registration under the Arkansas Sex Offender Registration Act or his release on parole being delayed because of his refusal to sign the registration form was a "non-grievable" matter. This

-9-

AO72A
(Rev. 8/82)

case is therefore not subject to dismissal based on his failure to exhaust his administrative remedies.

### *Sovereign Immunity*

Separate defendants Larry Norris, John Maples, and Linda Gates contend Setzke's claims for monetary damages are barred by the doctrine of sovereign immunity under the Eleventh Amendment.  We agree.  Setzke's claims for monetary damages against Larry Norris, John Maples, and Linda Gates, in their official capacity with the Arkansas Department of Correction (ADC), are subject to dismissal.  The Eleventh Amendment prohibits § 1983 suits seeking monetary damages from individual state officers in their official capacities.  *Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996).  The civil rights damages claims against the ADC officials are barred either by sovereign immunity or because in their official capacities the individuals are not considered to be persons for purposes of the civil rights statutes.  *See Murphy v. State of Arkansas*, 127 F.3d 750 (8th Cir. 1997).

However, the Eleventh Amendment does not bar official-capacity claims for injunctive relief against state officials.  *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  "The doctrine of *Ex Parte Young* is based on the idea that the power of federal courts to enjoin continuing violations of federal law is necessary to vindicate the federal interest in assuring the supremacy of that law."  *In re SDDS, Inc.,* 97 F.3d 1030, 1035 (8th Cir. 1996).  *See also Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253 (8th Cir. 1995).

-10-

### *Sex-Offender Registration Requirements*

This case involves Arkansas' Sex Offender Registration Act of 1997.  Ark. Code Ann.

§§ 12-12-901 *et seq.* (Repl. 2003).[2] *See Gunderson v. Hvass*, 339 F.3d 639 (8th Cir.

2003)(conducting a de novo review of the statutory language of Minnesota's Sex Offender

Registry to determine if Gunderson was required to register).  The Registration Act is made

applicable to the following five categories of individuals, Ark. Code Ann. § 12-12-905(a)(1)-

(a)(5):

> (1) A person who is adjudicated guilty on or after August 1, 1997, of a sex offense;
>
> (2) A person who is serving a sentence of incarceration, probation, parole, or other form of community supervision as a result of an adjudication of guilt on August 1, 1997, for a sex offense;
>
> (3) A person who is committed following an acquittal on or after August 1, 1997, on the grounds of mental disease or defect for a sex offense;
>
> (4) A person who is serving a commitment as a result of an acquittal on August 1, 1997, on the grounds of mental disease or defect for a sex offense; and
>
> (5) A person who was required to be registered under the Habitual Child Sex Offender Registration Act, former § 12-12-901 et seq., enacted by Acts 1987, No. 587, §§ 1-10, which was repealed by Acts 1997, No. 989, § 23.

Each of the application subsections set forth in § 12-12-905(a) contains a temporal

limitation of on or after August 1, 1997.  *Cf.  State v. Dickerson*, 142 Idaho 514, 517, 129 P. 3d

1263 (2006)(Act contained no temporal limitation for convictions from another jurisdiction; Act

required Dickerson to register as a sex offender due to his 1990 conviction in the State of

---

[2]We have referred to the statutory language in the 2003 version of the Arkansas Code Annotated.  Although there are some changes in the definitions contained in the current version of the Arkansas Code Annotated, such as the addition of crimes involving computer exploitation of children and Internet stalking to the definition of the term sex offense, the portion of the definitions at issue in this case have not changed.  *See* Ark. Code Ann. § 12-12-903(12)(A)(i), (12)(A)(iii) & (13) (Supp. 2007).

-11-

Washington, upon moving to Idaho after July 1, 1993–provision found to be unconstitutional).

Additionally, the Registration Act provides a "sex offender moving to or returning to this state from another jurisdiction shall register with the local law enforcement agency having jurisdiction no later than thirty (30) days after August 1, 1997, or thirty (30) days after the offender establishes residency in a municipality or county of this state, whichever is later." Ark. Code Ann. § 12-12-906(a)(2)(A). *See also Weems v. Little Rock Police Department*, 453 F.3d 1010, 1012 (8th Cir. 2006)("A person who sustained a conviction for a sex offense in another State and subsequently moved to Arkansas is likewise required to register."). Separate defendants Charles Pruitt, Paula Stitz, Mark Bernthal, Leanne Baker, and Vince Morris, maintain it is this provision of the Act, Ark. Code Ann. § 12-12-906(a)(2)(A) that subjected Setzke to the registration requirements upon his release from the Grimes Unit in December of 2004.

In *Williams v. State*, 351 Ark. 229, 91 S. W. 3d 68 (2002), the Arkansas Supreme Court had before it an individual, Williams, who had previously been adjudicated as a sex offender in another state. Williams had been convicted of third-degree sexual assault in Wisconsin on December 20, 1991. *Id.*, 351 Ark. at 231. On February 3, 1992, he was sentenced to, among other things, to two years probation. *Id.* Williams moved to Fort Smith, Arkansas, in November of 1992 while still on probation. *Id.* In 1993, Wisconsin enacted a Sex Offender Registry. *Id.* Because Williams was still on probation he was required to, and did, register as a sex offender in Wisconsin. *Id.*

In 1997, Arkansas passed its Sex Offender Registration Act. *Williams*, 351 Ark. at 231. As noted above the Arkansas Registration Act applied to anyone serving a sentence of probation or other form of community supervision as a result of an adjudication of guilty for a sex offense

-12-

on August 1, 1997.  *Id.*, 351 Ark. at 232.  On October 8, 1997, Williams pled guilty to charges

of breaking or entering and felony theft and was sentenced to a term of imprisonment.  *Id.*  In

May of 1998, he was paroled.  *Id.*

In April of 2000, the coordinator of the Arkansas Sex Offender Registry received

information from the Arizona Department of Public Safety that Williams was a sex offender and

was moving to Arkansas.  *Williams*, 351 Ark. at 232.  The information was obviously out of date.

*Id.*  On November 15, 2000, a warrant was issued for Williams' arrest since he was required to

register as a sex offender and had failed to respond to requests for address verification from the

Arkansas Crime Information Center.  *Id.*  A petition to revoke his suspended sentences for failing

to comply with the reporting requirements and for failing to register as a sex offender was filed.

*Id.*  Williams' suspended sentence was revoked on November 2, 2001.  *Id.*

Williams argued "revocation of his suspended sentence on the basis of the amended

statute was an unconstitutional *ex post facto* application of the law."  *Williams*, 351 Ark. at 233.

The court disagreed.  It noted his sentence was imposed in October of 1997 and the effective date

of the Registration Act was August 1, 1997.  *Id.*  Under the Act, "as an offender who moved to

Arkansas from another jurisdiction Williams had thirty days after August 1, 1997, in which to

register."  *Id.*

Williams also argued that because there was "nothing on the face of his Wisconsin

conviction that showed he was required to register as a sex offender, his time of "community

supervision" was over,  and therefore, he was not required to register under Arkansas law."

*Williams*, 351 Ark. at 233.  The court stated Williams' argument "ignores the fact that

-13-

Wisconsin's Sex Offender Registration Statute, enacted in 1993, applied to anyone who was 'on probation . . . on or after December 25, 1993, for a sex offense." *Id.* As Williams was on probation on December 25, 1993, in Wisconsin he was required to register in Wisconsin. *Id.* "This adjudication of guilty of a sex offense of the laws of Wisconsin brought Williams within the ambit of Arkansas's registration laws, since he was 'a person . . . serving a sentence of . . . other form of community supervision as a result of an adjudication of guilty for . . . a sex offense.'" *Id.* The two provisions therefore worked in conjunction bringing Williams within the ambit of the Arkansas registration laws, Ark. Code Ann. § 12-12-905(a)(2), and required him to register within thirty days after moving to Arkansas from another jurisdiction, Ark. Code Ann. § 12-12-906(a)(2)(A).

There is nothing in the record that establishes when Setzke moved to or returned to the State of Arkansas. Certainly there is nothing in the record that establishes that prior to August 1, 1997, he was serving a sentence or other form of community supervision. *See e.g., Williams*, 351 Ark. at 233 (registered sex offender in Wisconsin within the ambit of Arkansas's registration laws, since he was a person . . . serving a sentence of . . . other form of community supervision as a result of an adjudication of guilty for . . . a sex offense).

Defendants maintain Setzke's 1981 plea of guilty to indecent liberties with a child in Illinois constitutes a "sex offense" within the meaning of the Registration Act. Specifically, they argue the term "sex offense" includes "an adjudication of guilty for an offense of the law of another state . . . [w]hich is similar to any of the offenses enumerated in subdivision 12(A)(i) of this section." Ark. Code Ann. § 12-12-903(a)(12)(A)(iii)(a)(Repl. 2003).

-14-

Under Ark. Code Ann. § 12-12-903(13)(A) (Repl. 2003) the term sex offender is defined as follows: "a person who is adjudicated guilty,[3] adjudicated delinquent and ordered to register by the juvenile court judge, or acquitted on the grounds of mental disease or defect of a sex offense." Under Ark. Code Ann. § 12-12-903(12)(A)(i)(b)(Repl. 2003) the term "sex offense" is defined to include but not be limited to sexual indecency with a child as set forth in § 5-14-110.   Section 5-14-110 (Repl. 2003) provided that a person commits the crime of sexual indecency with a child if: "[b]eing eighteen (18) years old or older, the person solicits another person who is less than fifteen (15) years of age or who is represented to be less than fifteen (15) years of age to engage in sexual intercourse, deviate sexual activity, or sexual contact; or . . . [w]ith the purpose to arouse or gratify the sexual desires of himself or herself or those of any other person, the person purposefully exposes his or her sex organs to another person who is less than fifteen (15) years of age."

The term "sex offense" is also defined to include "[a]n adjudication of guilt for an offense of the law of another state . . . [w]hich is similar to any of the offenses enumerated in subdivision 12(A)(i) of this section."   Ark. Code Ann. § 12-12-903(12)(A)(iii)(a)(Repl. 2003).

In this case, Setzke plead guilty on April 20, 1981, in Du Page County, Illinois, to indecent liberties with a child, a Class 1 felony.  (Doc. 66) at page 4.  He was sentenced to a term of four years in the Illinois Department of Corrections.  *Id.*  He served his sentence and was not a registered sex offender in Illinois.

---

[3]The term adjudication of guilt is defined to include a plea of guilty or nolo contendere.  Ark. Code Ann. § 12-12-903(1) (Repl. 2003).

In *People v. Mathis*, 133 Ill. App. 3d 1037, 1028, 479 N. E. 2d 966 (1985), the court stated:

> Any person of the age 17 years and upwards commits indecent liberties with a child when he performs with a child under the age of 16 any act of sexual intercourse or any lewd fondling or touching of a child with intent to arouse or satisfy the sexual desires of either the child or the person or both. Indecent liberties with a child is a Class 1 felony. The punishment therefor is imprisonment for not less than four years and nor more than 15 years.

*Id.*, 133 Ill. App. 3d at 1028 (*citing* Ill. Rev. Stat. ch. 38, ¶ 11-4(a)(1) and (3) (1981); Ill. Rev. Stat. ch. 38, ¶ 1005-8-1(a)(4) (1981)).

In 2004, Setzke was in prison serving a sentence on theft or property, theft by receiving, and domestic battery charges, when he was required to register based on the 1981 Illinois conviction. It is unclear from the summary judgment record who, presumably someone in the ADC since he was in their custody, made the decision that Setzke was subject to the requirements of the Registration Act.

We agree that Setzke's plea of guilty to indecent liberties with a child is similar to sexual indecency with a child, one of the offenses enumerated in subdivision 12(A)(i). Thus, Setzke's conviction meets the definition of "sex offense" contained in subdivision 12(A)(iii)(a) relied upon by defendants. The question then becomes whether as defendants contend the provisions of § 12-12-906(a)(2)(A), which contain no temporal limitation, bring Setzke within the ambit of the Registration Act, or if this provision must be read in conjunction with the applicability provisions contained in § 12-12-905(a). We believe *Williams* answered this question when it concluded it was § 12-12-905(a) that brought Williams, who had been convicted of a sex offense

-16-

in Wisconsin, within the ambit of the Registration Act while § 12-12-906(a)(2)(A) placed the duty on him of registering within thirty days of moving to the state of Arkansas.

### Procedural Due Process

"The Due Process Clause of the Fourteenth Amendment guarantees that no state shall . . . deprive any person of life, liberty, or property, without due process of law." *Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir. 2005)(*citing* U.S. Const. amend. XIV § 2).  To state a procedural due process claim, a plaintiff must have a been deprived of a protected liberty or property interest.  *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).

"Property interests protected by due process are not created by the Constitution but, rather, are created and their dimensions defined, by existing rules or understandings that stem from an independent source such as state law." *Forrester*, 397 F.3d at 1054.  Protected liberty interests "may arise from two sources–the Due Process Clause itself and the laws of the States." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989).  "Only if we find a protected interest do we examine whether the deprivation of the protected interest was done in accordance with due process." *Forrester*, 397 F.3d at 1054.

Setzke maintains the Registration Act violates his rights to procedural due process.  As a result of being required to register without first being offered an opportunity to contest the Registration Act's applicability, Setzke maintains he has suffered damage to his reputation, his parole was adversely impacted, he lost his family, his home, his job and sustained damages.

In *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003), the Supreme Court was asked to determine whether Connecticut's sex offender

-17-

registry law, which required the Department of Public Safety (DPS) to post a sex offender registry containing registrants' names, addresses, photographs, and descriptions on an Internet Website and to make the registry available to the public violated the Due Process Clause of the Fourteenth Amendment.  The Court noted that the registry requirement was based on the fact of the previous conviction, not the fact of current dangerousness.  *Id.*, 125 S. Ct. at 1163.  In fact, the public registry explicitly stated that officials had not determined that any registrant was currently dangerous.  *Id.*

The Court therefore reversed the Court of Appeals for the Second Circuit which had ruled that the such disclosure both deprived sex offenders of a liberty interest and violated the Due Process Clause because registrants were not afforded a pre-deprivation hearing to determine whether they are likely to be currently dangerous.  *Connecticut*, 123 S. Ct. at 1162.  In doing so, the Court noted that even assuming the registrant was deprived of a liberty interest "due process does entitled him to a hearing to establish a fact that is not material under the Connecticut statute."  *Id.*, 123 S. Ct. at 1164.  It noted that the fact that "even if respondent could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of *all* sex offenders--currently dangerous or not–must be publicly disclosed.  Unless respondent can show that *substantive* rule of law is defective (by conflicting with a provision of the Constitution), any hearing on current dangerousness is a bootless exercise."  *Id.*  In conclusion, the Court states that "[p]laintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme."  *Id.* at 1165.

-18-

The Supreme Court has also held that the mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest. *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).  With respect to Setzke's claim that his parole was adversely impacted by his placement on Arkansas' sex offender registry, we note it has generally be held that the Arkansas state statutes governing parole do not create a liberty interest in parole because they provide the Parole Board may grant parole and substantive limitations on the Board's discretion are minimal. *Parker v. Corrothers*, 750 F.2d 653, 655-57 (8th Cir. 1984).  *See also Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005)(inmate has no constitutionally protected liberty interest in possibility of parole).

However, in this case, Setzke maintains he had been granted parole but was denied release unless he signed the Arkansas sex offender registration form.  As noted above, Setzke had not been required to register as a sex offender in Illinois where he had been adjudicated guilty of the "sex offense" in 1981 and had never been a registered sex offender.  Despite this, in 2004 it was determined that he was subject to registration in Arkansas based on the 1981 Illinois conviction.  Prior to Setzke being placed on the registry he was given no hearing or opportunity to contest his placement on the registry.

In *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004), a state prisoner, Tony Coleman, contended the state violated his rights by imposing, without advance notice or a hearing, sex offender registration and therapy as conditions of his release on mandatory supervision.  While on parole, Coleman had been charged with aggravated sexual assault of a child and indecency with a child by contact but pleaded guilty to misdemeanor assault.  *Id.* at 219.  Based on the assault conviction, Coleman's parole was revoked.  *Id.*  On January 17, 2001, Coleman was

-19-

released on mandatory supervision on the condition he reside in a halfway house until employed. *Id.* On February 27, 2001, the parole panel imposed two additional conditions on his release, requiring him to register as a sex offender and attend sex offender therapy. *Id.* Coleman was not given advance notice or a hearing. *Id.* He registered but did not attend therapy. *Id.* As a result in July 9, 2001, his parole was revoked. *Id.*

Coleman brought a habeas corpus action contending the imposition of the sex offender registration and therapy as conditions of his parole, without having an opportunity to contest his sex offender status violated his right to due process. *Coleman*, 395 F.3d at 221. The court noted it "must first determine whether Coleman had a liberty interest in not having sex offender conditions place on his parole, and, if so, whether the state provided constitutionally sufficient procedures before imposing them." *Id.* It noted that the state provided "no process in imposing the conditions, and that Coleman, not having been convicted of a sex offense, has never had an opportunity to contest his sex offender status." *Id.*

The court held that prisoners who have not been convicted of a sex offense "have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions." *Id.*, 395 F.3d at 222. It concluded the state had imposed stigmatizing classification and treatment on Coleman without providing him any process. *Id.* at 223. *See also Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999)(holding that a state's classification of a prisoner as a sex offender and requirement that he complete sex offender treatment as a precondition to parole eligibility implicated a liberty interest under the Due Process Clause); *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997)(holding that a state must provide a hearing before classifying

-20-

a prisoner as a sex offender and requiring the prisoner as a sex offender and requiring the prisoner to complete a treatment program as a condition to parole eligibility).

We similarly believe Setzke had a liberty interest in not being forced to choose between remaining in prison or being classified as a sex offender and placed on the registry in order to be released from prison on parole.  If a protected interest exists, the court then considers what process is due by balancing the specific interest that was affected, the risk of an erroneous deprivation of such interest through the procedures used, the probable value, if any, of additional or substitute procedural safeguards, and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

In this case, while Setzke states he was verbally told by someone in the front office at the Grimes Unit that if his criminal judgment did not require him to register as a sex offender he would not be required to register.  Clearly, there is nothing on the Illinois criminal judgment requiring Setzke to register as a sex offender.  However, he was still required to register. Although the summary judgment record is voluminous, there is too little evidence in the record for the court to perform the review necessary under *Matthews*.  It may be simply that Setzke should have been afforded an opportunity to have someone review the Illinois criminal judgment prior to his being placed on the Arkansas registry.  The summary judgment record contains no information on what steps, if any, were taken to review his Illinois conviction and determine if it required his registration under the Arkansas Registration Act.  Indeed, the next step apparent on the record before us is Setzke's notification that an appointment had been scheduled for his

-21-

screening and risk assessment.  Thus, we cannot determine what process is due Setzke on the record before us.

### Substantive Due Process

The Fourteenth Amendment substantive due process right "'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007)(*quoting Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)).  A violation of substantive due process rights requires a showing of:  (1) conscience-shocking conduct on the part of the official; and (2) "that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Slusarchuk v. Hoff*, 346 F.3d 1178, 1181-82 (8th Cir. 2003)(internal quotation marks and citation omitted).

Such rights include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997) (citations omitted). The Supreme Court has cautioned, however, that it has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.*

Legislation that infringes on a fundamental right is reviewed under the strict-scrutiny test and will be invalidated unless it is "narrowly tailored to serve a compelling state interest." *Reno*

AO72A
(Rev. 8/82)

*v. Flores,* 507 U.S. 292, 302, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993).  If no fundamental right

is involved, legislation is constitutional if it rationally furthers a legitimate state interest.

*Executive Air Taxi Corp. v. City of Bismarck, N.D.*, 518 F.3d 562, 569 (8th Cir. 2008).  "A

rational basis that survives equal protection scrutiny also satisfies substantive due process

analysis." *Id.* (*citing Minnesota v. Clover Leaf Creamer Co.*, 449 U.S. 456, 470 n. 12, 101 S. Ct.

715, 66 L. Ed. 2d 659 (1981)).

Setzke maintains that being a registered sex offender caused his family to lose their

home, problems with his employment, he lost his possessions, he lost custody of his daughter,

he was unable to live where he wanted to, it created delays in his being released on parole the

second time, and he was unable to maintain family connections.  He additionally maintains the

registry information being publically available on the Internet caused a great deal of mental

anxiety to not only him but his family members.

In *Does v. Munoz*, 507 F.3d 961, 964-965 (6th Cir. 2007), the plaintiffs raised similar

arguments about Michigan's Public Sex Offender Registry (PSOR).  The court found no

substantive due process violations from the requirement that the plaintiffs appear on the PSOR.

Each plaintiff had their conviction of a sex offense set aside under a Michigan's Setting Aside

Convictions Act (SACA).  Michigan's Sex Offender Registration Act (SORA) defined anyone

"convicted" to include anyone convicted of criminal sexual conduct including a conviction

subsequently set aside under SACA.  Plaintiffs maintained this provision of SORA violated their

constitutional rights.

The court held the plaintiffs had no fundamental right to privacy in their criminal records

since this information was already public.  *Does*, 507 F.3d at 965.  It held the convictions were

AO72A
(Rev. 8/82)

public and remained public because of the exception in the SACA for registration on the PSOR. *Id.* The court concluded the substantive due process claim failed. *Id. See also Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 499 -500 (6th Cir. 2007)(rejecting a substantive due process challenge to Michigan's requirement that youths who pled guilty under a youthful trainee diversion program act register as sex offenders even though they successfully completed the diversion program); *Doe v. Moore*, 410 F.3d 1337 (11th Cir. 2005)(Florida's sex offender registry statute–no fundamental right to refuse postconviction registration of personal information and publication on sexual offender/predator website); *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004)(no fundamental right of persons who have been convicted of serious sex offenses to be free from registration and notification requirements); *Gunderson v. Hvass*, 339 F.3d 639, 643 (8th Cir. 2003)(sex offender registration statute does not infringe fundamental right to a presumption of innocence); *Paul P. v. Verniero*, 170 F.3d 396, 405 (3d Cir. 1999)(effects of registering under sex-offender statute fail to fall within the penumbra of constitutional privacy protection). We conclude the right asserted by Setzke is not a fundamental right. Setzke's substantive due process claim fails.

### Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). An equal protection claim is stated when a fundamental right has been infringed or a state actor intentionally discriminates against the plaintiff because of membership in a protected class. *E.g., Purisch v. Tennessee Technological University*, 76 F.3d 1414, 1424 (6th Cir. 1996). If a neither a fundamental right

-24-

is burdened or a suspect class targeted, a statute does not violate equal protection so long as it bears a rational relationship to some legitimate end. *Romer v. Evans*, 517 U.S. 620, 631, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996).

It has been recognized that "[s]ex offenders are a serious threat in this Nation." *McKune v. Lile*, 536 U.S. 24, 32, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002). Statistics show that when "convicted sex offenders reenter society they are much more likely than any other type of offender to be re-arrested for a new rape or sexual assault." *Id.*, 536 U.S. at 32-33. "[E]very . . . State, has responded to these facts by enacting a statute designed to protect its communities from sex offenders and to help apprehend repeat sex offenders." *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 4, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003). *See also Weems v. Little Rock Police Dept.*, 453 F.3d 1010, 1015, 1017 (8th Cir. 2006)("The Arkansas legislature undoubtedly has a legitimate interest in protecting children from the most dangerous sex offenders. . . . The General Assembly first passed the Registration Act, finding specifically that 'protecting the public from sex offenders is a primary governmental interest.'").

Setzke's equal protection claim fails because he is not a member of a protected class and has not explained how he was treated differently from other similarly situated individuals. *Cf. Doe v. Michigan Dept. of State Police*, 490 F.3d 491 (6th Cir. 2007)(classification of youthful trainees who pled guilty to sexual offense under Holmes Youthful Trainee Act but were required to register under Michigan's Sex Offender Registration Act did not involve a suspect class and subject to rational basis review); *Weems v. Little Rock Police Dept.*, 453 F.3d 1010, 1016 (8th Cir. 2006)(Residency restriction of Arkansas Sex Offender Registration statute not based on suspect classification and did not implicate a fundamental right under equal protection

-25-

jurisprudence).  He has failed to allege purposeful discrimination took place or facts sufficient to show an intent to discriminate.  *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977).  Clearly, an interest in public safety is a legitimate concern.  Setzke points to nothing in the statutory language that resulted in his being treated differently or separately from other offenders.  *See e.g. Doe v. Pennsylvania Bd. of Probation and Parole*, 513 F.3d 95 (3d Cir. 2008)("Megan's Law" provision subjecting out-of-state offenders to community notification if they transfer supervision to Pennsylvania, but subjecting Pennsylvania offenders to community supervision only if they are designated a sexually violent predatory following a hearing, violated Equal Protection); *Does v. Munoz*, 507 F.3d 961 (6th Cir. 2007)(Michigan had rational basis for treating persons convicted of sexual offenses differently from persons convicted of other offenses).  In fact, the gist of Setzke's argument is not that he and others were classified differently but that the law was "misapplied" or applied in error to him.   Thus, he challenges not a classification but a mistaken application of the statute.

### *Double Jeopardy*

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, commands that no person shall 'be subjected for the same offense to be twice put in jeopardy of life or limb,' U.S. Const. amend. V, and applies to state prosecutions through the Fourteenth Amendment." *Harpster v. Ohio*, 128 F.3d 322, 327 (6th Cir. 1997)(*citing, Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969)).

> [T]he Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment.  The

-26-

> Clause protects only against the imposition of multiple *criminal* punishments for
> the same offense, . . . and then only when such occurs in successive proceedings.

*Hudson v. United States*, 522 U.S. 93, 99, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997)(internal

quotation marks and citations omitted).

"Whether a particular punishment is criminal or civil, at least initially, a matter of

statutory construction." *Hudson*, 522 U.S. at 99.  The court looks to whether the legislature has

indicated, either expressly or impliedly, whether the it intended to establish a civil or criminal

penalty. *Id.* (internal quotation marks and citation omitted).  Even if the legislature has indicated

an intent to create a civil penalty, the court may inquire further into whether the statutory scheme

is "so punitive either in purpose or effect as to transform what was clearly intended as a civil

remedy into a criminal penalty." *Id.* (internal quotation marks and citations omitted).

In making this last determination, the Supreme Court provided a number of factors the

court may consider including:  (1) whether the sanction involves an affirmative disability or

restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into

play only on a finding of scienter; (4) whether its operation will promote the traditional aims of

punishment-retribution and deterrence; (5) whether the behavior to which it applies is already

a crime; (6) whether an alternative to which it applies is already a crime; (6) whether an

alternative purpose to which it may rationally be connected is assignable for it; and (7) whether

it appears excessive in relation to the alternative purpose assigned.  *Kennedy v. Mendoze-*

*Martinez*, 372 U.S. 144, 168-169, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963).  However, the court

cautioned that these factors could be considered "only in relation to the statute on its face and

-27-

only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 100.

In the context of sex offender registration and notification statutes in general, courts have held that registration as a sex offender is not punishment. *See e.g., Femedeer v. Haun*, 227 F.3d 1244, 1254 (10th Cir. 2000)("Utah's scheme of public disclosure of sex offender information does not constitute criminal punishment under the Double Jeopardy Clause."); *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999)(Tennessee Sex Offender Registration and Monitoring Act does not violate the prohibition against double jeopardy); *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir. 1997)(New Jersey's sex offender registration law did not inflict punishment in violation of Double Jeopardy Clause). The stated purpose of the Arkansas General Assembly in enacting the Registration Act was to protect the public from sex offenders and to assist law enforcement in protecting the public safety. Ark. Code Ann. § 12-12-902. The stated intent of the Registration Act is non-punitive.

In *Kellar v. Fayetteville Police Department*, 339 Ark. 274, 5 S. W. 3d 402 (1999), the court then examined the effects of the Registration Act to determine whether it transformed what was clearly intended to be a civil remedy into a criminal penalty. The court concluded "dissemination of information regarding criminal conduct, without more, is not punishment when done to advance a legitimate government purpose or objective." *Id.*, 339 Ark. at 284-85. It concluded "while there may be some punitive characteristics inherent in the registration and notification statute, the Act is essentially regulatory and therefore non-punitive in nature." *Id.*, 339 Ark. at 287. Mandatory registration under Arkansas' Registration Act which is civil and

-28-

non-punitive does not constitute criminal punishment in violation of the Double Jeopardy Clause.

### Ex Post Facto

The Ex Post Facto Clause, Article I, Section 9 of the United States Constitution, provides that "[n]o . . . ex post facto Law shall be passed." The Ex Post Facto Clause prohibits laws that "make[] more burdensome the punishment for a crime, after its commission." *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990)(citation and quotation omitted). The Ex Post Facto Clause "has been interpreted to pertain exclusively to penal statutes." *Kansas v. Hendricks*, 521 U.S. 346, 370, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997)("Kansas Sexually Violent Predatory Act comports with due process requirements and neither runs afoul of double jeopardy principles nor constitutes an exercise in impermissible ex post facto lawmaking"). *See also Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999)(Tennessee Sex Offender Registration and Monitoring Act does not violate Ex Post Facto Clause).

The Supreme Court has held that sex offender registration statutes do not violate the Ex Post Facto Clause if their aims are not punitive. *Smith v. Doe*, 538 U.S. 84, 97, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003)(Alaska's sex offender registration statute). The Arkansas courts have determined that Arkansas' registration and notification statute is non-punitive in nature and does not violate the ex post facto clause of the United States and Arkansas constitutions. *Kellar v. Fayetteville Police Department*, 339 Ark. 274, 5 S. W. 3d 402 (1999). Additionally, in *Weems*, the Eighth Circuit rejected the argument that the residency restriction of the Arkansas Registration Act constituted an unconstitutional ex post facto law as applied to offenders who sustained convictions prior to the enactment of the statute. *Weems*, 453 F.3d at 1017. *See also,*

-29-

*Williams v. State*, 351 Ark. 229, 91 S. W. 3d 68 (2002)(Williams was on probation on December 25, 1993, and required to register in Wisconsin.  This "adjudication of guilt of a sex offense of the laws of Wisconsin brought Williams within the ambit of Arkansas's registration laws, since he was "a person . . . serving a sentence of . . . other form of community supervision as a result of an adjudication of guilt for a sex offense.").  Setzke's ex post facto claim therefore fails.

## **CONCLUSION**

For the reasons stated, I recommend as follows:  (1) Plaintiff's motions for summary judgment (Doc. 36, Doc. 66, and Doc. 98) should be granted in part and denied in part. Specifically, I find that the plaintiff's right to procedural due process was violated when he was placed on the Arkansas Sex Offender Registry without being afforded an opportunity to contest the Act's application to his 1981 conviction in Illinois.  In all other respects, I find plaintiff's motions for summary judgment should be denied; (2) I find the motion for summary judgment filed by the Area Manager or Supervisor, Leanne Baker, Mark Bernthal, Charles Pruitt, and Paula Stitz (Doc. 74)  should be denied in part and granted in part.  Specifically, I find the motion should be granted with respect to plaintiff's claims that his rights to substantive due process, equal protection, double jeopardy and his rights under the *Ex Post Facto Clause* were violated; and (3) I find the motion for summary judgment (Doc. 95) filed by Grimes Unit Records Supervisor Linda Gates, Grimes Unit Warden John Maples, and Arkansas Department of Correction Director Larry Norris should be granted in part and denied in part.  Specifically, I find plaintiff's claims for monetary damages against these defendants in their official capacities are barred by the doctrine of sovereign immunity under the Eleventh Amendment.  I further find the motion should be granted with respect to plaintiff's claims that his rights to substantive due

-30-

process, equal protection, double jeopardy and his rights under the *Ex Post Facto Clause* were violated.

**The parties have ten (10) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of October 2008.


/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)